Case No. 23-2052

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

TRINI ENCINIAS, as personal representative of
THE ESTATE OF ADONUS R. ENCINIAS, deceased,

*Plaintiff-Appellant*,

v.

NEW MEXICO CORRECTIONS DEPARTMENT, and ISABELLE
DOMINGUEZ, CHRIS MAURER, BEVERLY WOODBURY, and TITO VIDAL,
in their individual capacities,

*Defendant-Appellees*.

On Appeal from the United States District Court
for the District of New Mexico
The Honorable Kenneth Gonzales
No. 1:21-cv-001145-KG/SCY

**APPELLANT'S REPLY IN SUPPORT OF APPELLANT OPENING BRIEF**

Respectfully Submitted,

COLLINS & COLLINS, P.C.

***/s/ Parrish Collins*** 
Parrish Collins
P. O. Box 506
Albuquerque, NM  87103
(505) 242-5958
parrish@collinsattorneys.com

-and-

SANDOVAL FIRM

***/s/ Richard A. Sandoval*** 

Richard A. Sandoval

1442-D South Saint Francis Dr.
Santa Fe, NM 87505
(505) 795-7790

rick@sandovalfirm.com

***Attorneys for Plaintiff***

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

INFERENCE OF IMMINENT RISK OF SUICIDE ......................................... 2

CONCLUSION .................................................................................................. 11

CERTIFICATE OF COMPLIANCE ............................................................... 13

CERTIFICATE OF SERVICE ......................................................................... 13

CERTIFICATE OF DIGITAL SUBMISSION ................................................ 13

# TABLE OF AUTHORITIES

*Ashcroft* v. *al-Kidd*,
  563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149, 1160 (2011) ...................... 5

*Baze* v. *Rees*,
  553 U.S. 35, (2008) ................................................................................. 5, 6

*Bradshaw v. Beaver County*
  32 F.4th 1246, 1256 (10th Cir. 2022)...................................................................11

*Cox v. Glanz*
  800 F.3d 1231, 1248 (10th Cir. 2015)............................................................. 7, 11

*Crane v. Utah Dep't of Corr.*
  15 F.4th 1296, 1307............................................................................... 7, 11

*Elias v. Chisholm*,
  No. 2:19-cv-5501 (2023) ......................................................................... 9, 10

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ................................................................................. 5, 6

*Lucas v. Turn Key Health Clinics, LLC*,
  58 F.4th 1127, 1137................................................................................... 10

*Helling v. McKinney*,
  509 U.S. 25, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) ................................. 6, 7

*Mata v. Saiz*,
  427 F.3d 745, (10th Cir. 2005) ................................................................ 10, 11

*Sealock* v. *Colorado*,
  218 F.3d 1205, (10th Cir. 2000) ....................................................................... 10

*Taylor v. Barkes*,
  575 U.S. 822 (2015) ........................................................................................ 5

*Warner v. Gross,*
  776 F.3d 721, 729........................................................................................... 6

# INTRODUCTION

NMCD's Response Brief in opposition to Ms. Encinias Opening Brief essentially takes the position that NMCD officials did not draw the inference that Mr. Encinias was an imminent risk of suicide. See, Doc. 010110890878. This position ignores the fact that inferences are not at issue. NMCD officials had actual knowledge that Mr. Encinias was at high risk of suicide so no inferences were necessary. NMCD further takes a very restrictive view on the issue "imminent risk" suggesting that the time frame between knowledge of a high risk of suicide and the suicide itself is very short in duration. NMCD does not address what "imminent" means in terms of time in a suicide case.

NMCD gives scant attention to Judge Gonzalez' actual findings of numerous constitutional violations under the Eight Amendment. In fact, Judge Gonzales states:

> "Despite finding the law on point was not clearly established, the Court still determines that Ms. Encinias made a facial showing that Mr. Encinias' rights were violated by Mr. Maurer, Ms. Dominguez, Mr. Vidal, and Ms. Woodbury. Though this finding by itself does not save her claim from the qualified immunity bar, *the Court conducts the analysis to address the paucity of cases on point and avoid the perverse outcome of continually finding no clearly established law without ever clearly stating the law*." Order Granting Def. MTD Complaint for Failure to State a Claim and for Qualified immunity - Doc 67 at 15-16, [emphasis added].

NMCD unduly limits the scope of Plaintiff's appeal to issue of inference and imminence. However, Plaintiff seeks more than simple reinstatement of the case.

Plaintiff asks the Court to uphold Judge Gonzales' findings of constitutional violations to avoid what Judge Gonzales referred to as "*the perverse outcome of continually finding no clearly established law without ever clearly stating the law*." This is a very important case both in terms of reinstatement. It is equally, if not more important, that the conduct of NMCD be deemed unconstitutional to avoid the next suicide case and the next after that with no accountability on the part of NMCD for its Eighth Amendment violations.

## INFERENCE OF IMMINENT RISK OF SUICIDE

First and foremost, as mentioned, this is not a case of inferred knowledge. NMCD officials, Tito Vidal and Beverly Woodbury, had actual knowledge of Mr. Encinias high risk of suicide. Secondly, the issue of imminence is a distraction given that Mr. Encinias was considered a high risk of suicide up to November 27, 2018, after which he was not seen again by behavioral or mental health prior to his death on December 2, 2018. NMCD seems to argue that an inmate at high risk of suicide can be ignored at the height of his risks for several days without intervention or evaluation and NMCD's responsibility is cut shortly after the neglect begins since Mr. Encinias did not immediately commit suicide.

To address the imminent risks of suicide, analysis of the facts should begin on November 17, 2018, fifteen (15) days prior to Mr. Encinias' suicide. On November 17, 2018, Mr. Vidal found Mr. Encinias to be a "Clearance Level 5"

2

suggesting active psychosis, potential danger to himself and possible recent suicide attempts. *See* App at 11 – 63 (Second Amended Complaint Doc. 45 at 104-105). At that time, Mr. Encinias informed Mr. Vidal of his suicidal thoughts and voices urging him to harm himself. Mr. Encinias told Mr. Vidal that he wanted to kill himself and had a way to do it. (Doc. 45 at 105). These facts suggest the need for immediate therapeutic intervention. Although Mr. Vidal placed Mr. Encinias on suicide watch, there were no actual therapeutic interventions. On November 18, 2018, Ms. Woodbury, a behavioral health therapist saw Mr. Encinias and noted no changes. (Doc. 45 at 108). On November 18, 2018, Mr. Vidal met with Mr. Encinias again. Although Mr. Encinias reported he was not suicidal, he did report ongoing hallucinations and demons inside him. (Doc. 45 at 110). Mr. Vidal, a provisionally licensed social worker that would soon lose even that license for failure to pass his exams, failed as gatekeeper to report his findings to a psychiatrist (Doc. 45 at 109).

On November 19, 2018, Ms. Woodbury again saw Mr. Encinias and noted no changes yet she too failed to provide any therapeutic services (Doc. 45 at 111). Despite no additional evaluation and no involvement of a psychiatrist, on November 20, 2018 right at 72 hours on suicide watch, Mr. Encinias was taken off suicide watch by Marcia Esquivel. This 72 hour threshold and removal from suicide watch has no therapeutic basis but instead seemed geared toward avoidance

psychiatrist case mandated by NMCD policy when suicide watch extends beyond 72 hours (Doc. 45 at 112). Rather than placement in the infirmary and with no therapeutic interventions, Mr. Encinias was put in restrictive housing where he was allowed out of his cell only one hour per day (Doc. 45 at 115) because as Mr. Vidal put it, there was no other place to put him (Doc. 45 at 113). On November 21, 2018, Ms. Woodbury categorized Mr. Encinias as "Code 5" needing the highest level of care, but she again failed to provide for services (Doc. 45 at 116). In fact, Ms. Woodbury left the clinical assessment form blank other than basic biographical information. Despite the absence of proper completion of the clinical assessment form, supervisor Elizabeth Chavez, approved it (Doc. 45 at 116-117). On November 27, 2018, Ms. Woodbury's notes suggest no mental health concerns, and again no services were provided. (Doc. 45 at 118). Mr. Encinias was not seen again by behavioral or mental health prior to his death (Doc. 45 at118). On December 2, 2018, 5 days after his last visit with Ms. Woodbury, Mr. Encinias was found dead in his cell, having hanged himself (Doc. 45 at119).

  NMCD discusses extensively that Plaintiff must show more than the prison officials "should have known" of the risk of harm. There is no issue of "should have known", NMCD did know of Mr. Encinias high risk of suicide. The facts stated in the Complaint clearly demonstrate this knowledge.

NMCD cites to *Taylor v. Barkes*, 575 U.S. 822, 826 (2015) which relates to suicide screening rather than treatment. NMCD cites *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) for the proposition that a prison official must not only be aware of facts from which an inference could be made but also must actually drew the inference. Neither *Taylor* nor *Farmer* relieve NMCD of liability. Mr. Encinias had been screened, had been determined to be at high risk of suicide, had been placed on suicide watch, had been abruptly removed from suicide watch without further evaluation seemingly to avoid involvement of a psychiatrist. Finally, he was place in segregation, known to increase the risk of suicide, rather than being provided with mental health services. NMCD fails to recognize that qualified immunity does not protect the "plainly incompetent or those who knowingly violate the law." *Ashcroft* v. *al-Kidd*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149, 1160 (2011). In this case, it is either one or the other. Either Defendants Vidal and Woodbury were plainly incompetent, or they knowingly violated the law by shielding the psychiatrist from involvement in Mr. Encinias' care.

NMCD further argues that the risk of harm must be imminent. NMCD cites to several cases for this proposition. NMCD cites to *Baze v. Rees* and *Warner v. Gross*, both of which address methods of prisoner execution. Although not exactly

on point, Both *Baze* and *Warner* provide some helpful language. *Baze* states further that

> "Our cases recognize that subjecting individuals to a risk of future harm--not simply actually inflicting pain--can qualify as cruel and unusual punishment. To establish that such exposure violates the Eighth Amendment, however, the conditions presenting the risk must be "*sure or very likely* to cause serious illness and needless suffering," and give rise to "sufficiently *imminent* dangers." *Helling v. McKinney*, 509 U.S. 25, 33, 34-35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) (emphasis added).

Baze v. Rees, 553 U.S. 35, 49-50

*Warner* adopts the same language as *Baze* adding "there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" Warner v. Gross, 776 F.3d 721, 729, *Baze v. Rees*, 553 U.S. 35, 49-50 (2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 & n.9 (1994)). This brings us back to *Farmer v. Brennan* which states that the requisite knowledge of a prison official may be demonstrative in the usual ways including inferences from circumstantial evidence and that a "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer v. Brennan, 511 U.S. 825, 842 citing Cf. LaFave & Scott § 3.7, p. 335 ("If the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it"). Again, it is not

6

just that the risk of suicide would be obvious to a factfinder, the high risk of suicide was a known fact acknowledged by all named defendants.

NMCD also cites *Helling*, 509 U.S. at 35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 which involves a threat of future harm posed by ongoing exposure to secondhand smoke (Environmental Tobacco Smoke/ETS). Helling is plainly inapplicable as the danger posed by secondhand smoke is remote where in Mr. Encinias case, the danger was imminent as reflected by the facts set forth in the Complaint and summarized above.  In short, Helling deals with future harm over the course of years, where this case involves days.

Finally, on the topic of imminent threat of harm, NMCD cites to *Crane v. Utah Dep't of Corr*. Crane does not appear to address the issue of imminent harm at all. *Crane* made clear that placing a suicidal inmate in a cell that facilitates hanging is not "unconstitutional *per se*". Crane v. Utah Dep't of Corr., 15 F.4th 1296, 1307. The "per se" does a lot of heaving lifting suggesting that these actions could be unconstitutional. Indeed, Crane states "prison officials are deliberately indifferent if they fail to take reasonable steps to protect a pre-trial detainee or an inmate from suicide when they have subjective knowledge that person is a substantial suicide risk". *Id.* (citing *Cox v. Glanz*, 800 F.3d 1231, 1248-49 (10th Cir. 2015)). This language clearly encompasses the actions and inactions of NMCD with regard to Mr. Encinias.

7

Interestingly, NMCD argues that "The Second Amended Complaint is devoid of allegations that any of the individual Defendants drew the inference that the deceased posed an imminent threat of suicide." In making this argument, NMCD misstates the Second Amended Complaint (Doc. 45 at118). In fact, Doc. 45 at 118 does not say that Mr. Encinias denied mental health issues but that on November 27, 2018, Ms. Woodbury did not note any mental health concerns. These are two very different propositions especially considering that both Ms. Woodbury and Mr. Vidal had found Mr. Encinias at high risk of suicide on November 21, 2018, Ms. Woodbury had failed to complete the suicide assessment form, and her supervisor had signed off on it despite the fact that it contained no mental health evaluation but only basic biographical information. There was no additional evaluation between November 21, 2018 and November 27, 2018 that would have led Ms. Woodbury to conclude, as she did, that there were no mental health issues. What Doc. 45 at 118 does say is that Mr. Encinias was not seen again by behavioral or mental health staff after November 27, 2018, despite clear knowledge, not inferences, that Mr. Encinias was at high risk of suicide. NMCD wants to get credit in terms of imminence for its very act of deliberate indifference in leaving Mr. Encinias to his own devices for 5 days with no mental health interventions or even visits during that time.

Taking the above discussion of facts and law into consideration, NMCD's discussion in its section "A. Clearly Established Law" all weighs in favor of reinstatement of Mr. Encinias case. Briefly, NMCD's discussion of clearly established law is heavy on the subjective knowledge of defendants and inferences thereon. Again, this is not a case requiring any inferences at all. NMCD had actual knowledge of Mr. Encinias' high risk of suicide and did absolutely nothing to alleviate the risk. Instead, Mr. Vidal and Ms. Woodbury engaged in mere perfunctory visits geared more toward avoiding psychiatric care than providing Mr. Encinias with services, none of which were ever provided other than the brochure provided to Mr. Encinias by Mr. Vidal.

The law was clearly established according to NMCD's own cases.

## GATEKEEPERS

Mr. Vidal and Ms. Woodbury acted as gatekeepers whose sole task seemed to be to shield the psychiatrist from involvement in the care and treatment of Mr. Encinias.

NMCD cites of *Elias v. Chisholm*, No. 2:19-cv-5501 (2023) to discount Plaintiff's arguments on gatekeeper liability. In so doing, NMCD suggests that the prison psychologist in *Elias* knew that Plaintiff in that case was suicidal. This suggestion is plainly contrary to the Elias opinion:

> "Plaintiff never expressly told Dr. Chisholm that plaintiff was experiencing suicidal thoughts in the days or weeks leading up to the suicide attempt. As

9

defendants note, plaintiff [*24] allegedly "began to feel suicidal" only on July 27, 2018, the day of the suicide attempt." (SAC at 8). Elias v. Chisholm, 2023 U.S. Dist. LEXIS 54312, *23-24.

NMCD argues that *Lucas v. Turn Key Health* is inapplicable because it is a 2023 case and it involves medical negligence not suicide. Document: 010110890878, p. 25. In doing so, NMCD ignores the language is *Lucas* quoting the 2000 case of *Sealock v. Colorado* and the 2005 case of *Mata v. Saiz*. Turn Key Health plainly invokes these prior cases:

> In Sealock, we stated that the subjective component can be satisfied under two theories: failure to properly treat a serious medical condition ("failure to properly treat theory") or as a gatekeeper who prevents an inmate from receiving treatment or denies access to someone [**11] capable of evaluating the inmate's need for treatment ("gatekeeper theory"). *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). The latter theory can apply to medical professionals when the professional knows that his or her role in a medical emergency is solely to refer the patient to another. *Id.* Even a brief delay in treatment can be unconstitutional. *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005). The district court here erroneously determined the complaint only alleged "the first type of deliberate indifference [failure to treat], i.e., that despite being made aware of Decedent's condition and symptoms, Dr. Myers . . . refused to have her seen by a gynecologist." II Aplt. App. 375. It appears the district court improperly conflated both theories, and that contrary to the district court's conclusion, the complaint rests on both possible theories for holding Dr. Myers liable.

Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1137

Oddly, NMCD argues that *Lucas* is inapplicable because it involved medical negligence rather than suicide. In arguing that medical neglect is inapplicable to a suicide case, NMCD further ignores both Plaintiff's and NMCD's cited caselaw. In fact, the suggestion ignores NMCD's own statements in its response brief:

Prison suicide claims implicate the Eighth Amendment's prohibition against cruel and unusual punishment, *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005), in connection with an inmate's serious medical needs. *Cox v. Glanz,* 800 F.3d 1231, 1248 (10th Cir. 2015). Therefore, prison officials are deliberately indifferent if they fail to take reasonable steps to prevent an inmate's suicide when they have subjective knowledge that inmate poses a suicide risk. *George on behalf of Bradshaw v. Beaver County,* 32 F. 4th 1246, 1256 (10th Cir. 2022); *Crane v. Utah Dept. of Corrections,* 15 F.4th at 1307; *Cox v. Glanz,* 800 F.3d at 1248."

Document: 010110890878, p. 17

Suicide risk is a serious medical need. Failure to provide mental health services to an inmate at high risk of suicide clearly invokes the Eighth Amendment. This is reflected in the opinion of Judge Gonzales.

## CONCLUSION

Judge Gonzales ruling that the law was not clearly established at the time of Mr. Encinias' suicide should be reversed. The remainder of Judge Gonzales opinion should be affirmed with a ruling that moving forward the actions and inactions of NMCD exhibited in this case are clearly violative of the 8th Amendment.

Respectfully submitted this 9th day of August, 2023.

    Respectfully Submitted,

    COLLINS & COLLINS, P.C.

    ***/s/ Parrish Collins***
    Parrish Collins

        P. O. Box 506
        Albuquerque, NM  87103
        (505) 242-5958
        parrish@collinsattorneys.com

-and-

SANDOVAL FIRM


***/s/ Richard A. Sandoval***
Richard A. Sandoval
1442-D South Saint Francis Dr.
Santa Fe, NM 87505
(505) 795-7790
rick@sandovalfirm.com
***Attorneys for Plaintiff***

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that Appellant's Reply in Support of Appellant Opening Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,786 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii). This opening brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Times New Roman.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing via the appellate CM/ECF system on August 9, 2023, causing all parties of record to be served electronically.

*/s/ Parrish Collins*
Parrish Collins

## CERTIFICATE OF DIGITAL SUBMISSION

Pursuant to the Tenth Circuit ECF User's Manual, I hereby certify with respect to the foregoing document, that:

1) All required privacy redactions have been made per 10th Cir. R. 25.5

2) Required hard copies will be filed with the court upon acceptance; and

3) The digital submission has been scanned for viruses with the most recent version of Window Defender and, according to this program, is free of viruses.

*/s/ Parrish Collins*
Parrish Collins